Cole J. COOPER, Plaintiff-Appellant,†

GUNDERSON LUTHERAN HEALTH PLAN, Plaintiff,

v.

RICK'S BLACKTOP & PAVING Co. and James Lee
Cherry, Defendants,

GRINNELL MUTUAL REINSURANCE COMPANY,
Defendant-Respondent.††

Court of Appeals

*No. 2014AP966. Submitted on briefs November 5, 2014.
—Decided March 19, 2015.*

2015 WI App 32

(Also reported in 864 N.W.2d 99.)

† Petition for review denied June 12, 2015.
†† Petition for cross-review dismissed.

790

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alex Flynn* of *Alex Flynn & Associates, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Amy F. Scholl* and *Karen M. Gallagher* of *Coyne, Schultz, Becker & Bauer, S.C.*, Madison.

Before Blanchard, P.J., Higginbotham, and Kloppenburg, JJ.

¶ 1. BLANCHARD, P.J. While riding a motor-cycle, Cole Cooper collided with a stationary trailer, which was parked on the side of a road. The trailer had been hauled to its roadside location by a dump truck as part of a driveway paving project. The owner of the trailer and the dump truck held two insurance policies with Grinnell Mutual Reinsurance Company: a business auto policy and a commercial general liability policy. Grinnell contested coverage for the accident under both policies. The circuit court granted summary judgment in favor of Grinnell, concluding that neither policy provided coverage. Cooper appeals.

¶ 2. We conclude, based on undisputed facts submitted to the circuit court, unambiguous policy language, and the current arguments of the parties, that: (1) there is an initial grant of coverage under the business auto policy, because the dump truck that the insured used to leave the trailer in an allegedly hazardous location was listed on the policy's "schedule

of covered autos"; and (2) coverage is excluded under the commercial general liability policy, because the policy excludes claims arising out of the ownership, maintenance, or use of an "auto," the trailer and the dump truck meet the policy definition of an auto, and an exception to this auto exclusion cited by Cooper does not apply. Accordingly, we reverse in part, affirm in part, direct that summary judgment regarding coverage be granted to Cooper on the business auto policy, and remand for further proceedings.

## BACKGROUND

¶ 3. Cooper's complaint in this negligence action alleges that he was seriously injured when the motorcycle he was operating collided with a trailer that was parked illegally in a lane of a road and that was obscured from the view of approaching drivers by a hill. Defendants named in the complaint included: Rick's Blacktop & Paving Company, owner of the trailer; James Lee Cherry, a Rick's employee who allegedly negligently parked the trailer using a company dump truck; and Grinnell, which issued a business auto policy and a commercial general liability policy to Rick's.

¶ 4. Grinnell successfully moved to bifurcate insurance coverage issues from the underlying merits portion of the lawsuit and to stay discovery on the merits pending resolution of the coverage issues. Grinnell acknowledged that it had issued the two policies to Rick's and that both were in place at the time of the accident. However, Grinnell moved for summary judgment on the grounds that under each policy there is either no initial grant of coverage or coverage is excluded.

794

¶ 5. According to deposition testimony submitted by Grinnell and not contested by Cooper, before the accident Rick's employee Cherry drove a company dump truck to the driveway paving project worksite, pulling a trailer. The dump truck contained asphalt and the trailer carried pieces of resurfacing equipment. Cherry parked the trailer at the side of a road near the worksite and the resurfacing equipment was unloaded.

¶ 6. There is a dispute between the parties on appeal as to whether there is a genuine issue of material fact about whether the dump truck was attached to the trailer at the time of the accident. However, the parties agree that all evidence shows that, at the time of the accident, the trailer was located where it was because Cherry had used the dump truck to park the trailer in that spot.

¶ 7. The circuit court concluded that there is not an initial grant of coverage under the business auto policy because, although the policy includes trailers within its definition of an auto, the particular trailer that Cooper struck is not listed within the policy's "schedule of covered autos." As to the commercial general liability policy, the court concluded that an exclusion related to "auto" use applies to prevent coverage.

## DISCUSSION

¶ 8. We review a circuit court's grant of summary judgment de novo, independently of the circuit court, applying the same methodology. *AccuWeb, Inc. v. Foley & Lardner*, 2008 WI 24, ¶ 16, 308 Wis. 2d 258, 746 N.W.2d 447. "Summary judgment is only appropriate if

there are no genuine issues of material fact, and the moving party, having established a prima facie case, is entitled to judgment as a matter of law." *Id.*; Wis. Stat. § 802.08(2) (2013–14).[1] "Summary judgment materials, including pleadings, depositions, answers to interrogatories, and admissions on file are viewed in the light most favorable to the nonmoving party." *Accu-Web, Inc.*, 308 Wis. 2d 258, ¶ 16.

¶ 9. Our approach to the interpretation of insurance policies is well established. As our supreme court has explained:

> This case involves the interpretation of an insurance contract and thus presents a question of law that we review de novo. Judicial interpretation of a contract, including an insurance policy, seeks to determine and give effect to the intent of the contracting parties. Insurance polices are construed as they would be understood by a reasonable person in the position of the insured. However, we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium.
>
> Our procedure follows three steps. First, we examine the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there. If the claim triggers the initial grant of coverage in the insuring agreement, we next examine the various exclusions to see whether any of them preclude coverage of the present claim. Exclusions are narrowly or strictly construed against the insurer if their effect is uncertain. We analyze each

_____

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

exclusion separately; the inapplicability of one exclusion will not reinstate coverage where another exclusion has precluded it. Exclusions sometimes have exceptions; if a particular exclusion applies, we then look to see whether any exception to that exclusion reinstates coverage. An exception pertains only to the exclusion clause within which it appears; the applicability of an exception will not create coverage if the insuring agreement precludes it or if a separate exclusion applies.

*American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶¶ 23–24, 268 Wis. 2d 16, 673 N.W.2d 65 (citations omitted).

## I. THE BUSINESS AUTO POLICY

¶ 10. We first summarize pertinent terms of the business auto policy, and then explain why we conclude that, under its unambiguous terms, there is an initial grant of coverage in regard to the accident at issue here, at least under the factual submissions to the circuit court and the legal arguments now advanced by the parties. In sum, we conclude that there is evidence from which a fact finder could infer that Cooper's injury was caused by an accident resulting from use of the company dump truck by Rick's, that the dump truck is listed on the policy's schedule of covered autos, and that Grinnell's arguments that this does not create an initial grant of coverage are incorrect.

¶ 11. The business auto policy provides coverage for money that Rick's "must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " The definitions section of the policy states in

pertinent part, " 'Auto' means a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads . . . .' "

¶ 12. The policy further provides, in addressing the "schedule of coverages and covered autos," as "Item Two" of the declarations portion of the policy, that the policy "provides only those coverages where a charge is shown in the premium below. Each of these coverages will apply only to those 'autos' shown as covered 'autos' . . . for a particular coverage," as designated by a numerical code. Under this numerical code, as pertinent here, the coverage purchased covers "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown . . . ." "Item Three" is the "schedule of covered autos you own." The parties agree that the trailer at issue here is not listed on this schedule and also agree that the dump truck Cherry used to haul the trailer to its location at the time of the accident is listed on this schedule.

¶ 13. Grinnell argues that, under the undisputed facts, the unambiguous terms of the business auto policy establish that there is no initial grant of coverage, and no further analysis is necessary under *American Girl, Inc.* This is so, Grinnell contends, because the trailer is not listed on the schedule of covered autos, and Cooper collided with the trailer and not with the dump truck. Cooper makes three counterarguments, the first of which we conclude is correct. We therefore address only that argument, and then explain why we reject Grinnell's responses to that argument.

¶ 14. Cooper argues that in order for there to be an initial grant of coverage under the business auto policy, he need not have collided with the dump truck. Instead, Cooper contends, there is an initial grant of

798

coverage under the unambiguous terms of the policy because Cherry used the dump truck to leave the trailer in the particular location on the road, and the fact that the trailer was left in this particular location is alleged to have caused the accident. We agree. Based on the factual submissions to date and the current arguments of the parties, we conclude that there is an initial grant of coverage based on the uncontested facts that Cherry used a dump truck that was listed on the schedule of covered autos to tow the trailer to, and leave it in, the allegedly hazardous location where Cooper's motorcycle collided with it.

¶ 15. We divide Grinnell's responses into three categories. First, Grinnell argues that "the use of a *scheduled* dump truck to drop off the *non-scheduled* Trailer at the scene does not convert the Trailer into a covered auto." (Emphasis in original.) Second, Grinnell argues that, under Cooper's interpretation of the policy, the policy requirement that the trailer be listed on the schedule of covered autos in order to be covered "would be meaningless; an insured would not need to list any 'auto' that could be hauled by a separate listed auto." Third, Grinnell argues that Cooper's interpretation ignores the "independent, concurrent cause" rule that applies to insurance coverage interpretation in Wisconsin. We address these arguments in turn, rejecting each.

¶ 16. We conclude that Grinnell's first argument, contending that the trailer cannot be "converted" "into a covered auto," effectively asks us to read an exclusion into the policy that is not there. The hypothetical exclusion would be to the following effect: Coverage is excluded if an auto not listed on the schedule of covered autos is involved in an accident, even if injury or damage was caused by an accident resulting from

use of an auto listed in the schedule of covered autos. We express no opinion as to the effects if Grinnell were to insert our hypothetical exclusion into future policies. What matters for present purposes is that this hypothetical exclusion is not contained in the policy here.

¶ 17. The following hypothetical scenario illustrates our point. Assume that, on the way to the work site, Cherry had negligently operated the dump truck so that the trailer swung out into an opposing lane of traffic, and as a result a vehicle traveling in the opposing lane collided with the trailer. Under Grinnell's apparent interpretation of the policy, there would not be an initial grant of coverage in this scenario, because that would "convert" the unscheduled trailer into a scheduled trailer. This is not a reasonable reading of the unambiguous terms of the policy as currently written. In our hypothetical scenario, as in this case, the trailer would be an instrumentality of allegedly negligent use of an "auto" listed on the schedule, the dump truck, and it would not matter whether the trailer that actually collided with the vehicle in the other lane was listed on the schedule of covered autos.

¶ 18. We turn now to Grinnell's argument that our interpretation ignores the fact that trailers-as-autos must be listed on the schedule in order to create coverage. Grinnell contends that, under our interpretation of the policy, all that could matter is whether the vehicles that tow trailers and leave them places are listed on the schedule. This argument is flawed because it overlooks many conceivable accident scenarios in which it would be advantageous to an insured to list a trailer that it owns on the policy schedule, and to make the corresponding premium payments, regard-

800

less whether other autos are listed that might tow trailers and leave them places. Grinnell seems to ignore the fact that, unless the accident *does* involve use of a scheduled auto, there is no initial grant of coverage.

¶ 19. We can think of many circumstances in which accidents involving a trailer could occur that might be covered only if the trailer were listed on the schedule, regardless whether vehicles that might tow the trailer are listed on the schedule of covered autos. For example, assume that an accident occurs on a stationary trailer as a result of an insured negligently allowing a surface of the trailer, where people might walk, to be slick. Or, assume that an accident occurs on a stationary trailer as a result of an insured negligently failing to fix a defective trailer part or mechanism used to secure equipment or moving parts of the trailer itself. As these examples illustrate, under the unambiguous terms of the policy, when there is a trailer-related accident, the circumstances surrounding the towing of the trailer, or its most recent towing, will sometimes matter to an initial grant of coverage determination, but those circumstances will not always matter.

¶ 20. This brings us to Grinnell's argument that the "independent, concurrent cause" rule applies here and precludes coverage. Under this rule, " '[w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause,' " so long as the covered risk is independent from the excluded risk. *Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 331, 531 N.W.2d 376 (Ct. App. 1995) (quoted source omitted).

¶ 21. The briefing of both parties on this issue is sometimes difficult to track. In any case, however, we question whether this rule could assist Grinnell in light of the rule of construction that if insurance policy language is not "susceptible to more than one reasonable interpretation," then "it is enforced as written, without resort to rules of construction *or applicable principles of case law." See Folkman v. Quamme*, 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857 (emphasis added). So far as the parties have called our attention to pertinent provisions in the policy, we conclude that a reasonable person in the position of the insured would have read the policy—including noting the absence of the trailer at issue here on the schedule of covered autos—and believed that the policy would provide an initial grant of coverage based on alleged negligent use of the dump truck to place the unscheduled trailer in an allegedly hazardous location resulting in an accident.

¶ 22. Moreover, attempting to engage Grinnell's argument on its own terms, whatever the application of the independent, concurrent cause rule might be in other contexts, it appears to have no application here, because neither party is referring to the accident as having more than one negligent cause contributed by Rick's. That is, no one suggests that there were multiple instances of negligence by Rick's that jointly resulted in injury. Putting aside a closely related lack-of-signage-at-the-scene claim, Cooper alleges only a single act of negligence by Rick's: using the dump truck to leave the trailer in a hazardous spot. The parties cite authority in a variety of contexts, but Grinnell fails to cite case law or authority applying this doctrine in a case involving a policy resembling this business auto policy in which the following had *not*

allegedly combined to cause injury: (1) one or more perils that were covered and not excluded from a policy, and (2) one or more perils that were excluded or not covered.

¶ 23. Having rejected Grinnell's arguments that there is not an initial grant of coverage in the business auto policy based on alleged negligent use of the dump truck, we need not and do not address additional arguments of the parties on appeal about whether there are genuine issues of material fact or issues of law involving the question of whether the trailer was attached to the dump truck at the time of the accident or whether Rick's satisfied a thirty-day window set forth in the policy for notification of Grinnell that it had acquired the trailer. So far as the parties tell us, these issues could matter to a summary judgment decision only if we did not conclude that use of the dump truck in placing the trailer in a hazardous position provides a basis for an initial grant of coverage.

¶ 24. We conclude that there is an initial grant of coverage and that summary judgment in favor of Grinnell on the business auto policy coverage issue was inappropriately granted. Grinnell fails to provide us with an alternative basis to sustain the decision to grant summary judgment to Grinnell, and therefore we reverse that portion of the order.

¶ 25. Cooper asks us "to remand this case to the circuit court for trial with Grinnell as a defendant," and Grinnell does not suggest that summary judgment for Cooper regarding an initial grant of coverage under the business auto policy is not appropriate if we reject Grinnell's arguments on appeal. Therefore, we direct the circuit court to enter an order granting summary

judgment in favor of Cooper on this issue based on our resolution of the arguments addressed above.

## II. THE COMMERCIAL GENERAL LIABILITY POLICY

¶ 26. Neither party suggests that if we find coverage under the business auto policy based on the current arguments of the parties, we should ignore the commercial general liability policy. We proceed to address the second policy because that might be of value, depending on the course of proceedings following remand. We conclude that unambiguous provisions in the commercial general liability policy exclude "auto" use from coverage, that these provisions apply here to exclude coverage under this policy, and that an exception that Cooper attempts to rely on does not apply.

¶ 27. The commercial general liability policy defines "auto" as a "land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment," but states that " 'auto' does not include 'mobile equipment.' " In pertinent part, the policy excludes coverage for injury or damage "arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by . . . any insured." We conclude that, under these unambiguous terms, the exclusion applies to pertinent uses of both the trailer and the dump truck here, and therefore there is no coverage.

¶ 28. Cooper exclusively focuses his arguments on the trailer, specifically arguing that the trailer here does not qualify as an "auto," the use of which is

excluded from coverage.[2] He first argues that the trailer is not an "auto" because the trailer "was not *traveling* on a public road and was not 'designed' to travel on a public road, unless it was hooked up to another vehicle," and "the injury arose from the abandonment of the trailer along the side of the road" as an "inanimate object." Assuming without deciding that these constitute developed arguments, they are without merit. Cooper attempts to assign meanings to the terms of the policy that are wholly unreasonable and also ignores facts that he does not dispute about the trailer having been brought to the work site to deliver paving equipment, not to be abandoned.

¶ 29. As an alternative theory, Cooper argues that the trailer qualifies under an exception to the auto exclusion, namely, the exception for "mobile equipment." Cooper points to the following partial definition in the policy of "mobile equipment": "Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted: . . . Road construction or resurfacing equipment such as graders, scrapers or rollers." Cooper argues that if the trailer had a "permanently attached" ramp that was used to load and unload paving equipment, the trailer would qualify as "mobile equipment," "because it provided mobility to the ramp." Cooper's argument is unclear, but it is sufficient to explain that the language

---

[2] Cooper does not argue that the exclusion does not apply because the injury here did not arise out of the ownership, maintenance, or use of the trailer by Rick's. Even if he did, however, it seems apparent that this argument would be of little value to him, because we would apply the logic of the first section of this opinion to conclude that coverage is excluded due to his allegation that his injury arose out of use of the dump truck, clearly a "land motor vehicle . . . designed for travel on public roads," by Rick's.

he quotes from the policy defining "mobile equipment" could not be said to describe a ramp that is part of a trailer. Any such ramp could not be considered road construction or resurfacing equipment.

## CONCLUSION

¶ 30. For these reasons, we reverse the portion of the circuit court's summary judgment decision determining that there is not an initial grant of coverage under the business auto policy, direct the circuit court to enter an order granting summary judgment to Cooper regarding coverage under the business auto policy, affirm the summary judgment decision based on the exclusion of coverage in the commercial liability policy, and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part; and cause remanded with directions.