ESTATE OF Asia D. JONES, by Attorney Donal M.
Demet, Personal Representative, David Edison,
and Nicole J. Jones, Plaintiffs-Appellants,

v.

Terence J. SMITH, Telisa C. Hopgood,
Tvette Huddleston, Duane Gladney,
Shontina Gladney, Come & Grow Learning
Arts Center, Inc., and Wee World Day Care, Inc.,
Defendants,

CAPITOL INDEMNITY CORPORATION,
Defendant-Respondent.†

Court of Appeals

*No. 2008AP1753. Submitted on briefs January 6, 2009.
—Decided May 27, 2009.*

2009 WI App 88

(Also reported in 768 N.W.2d 245.)

† Petition to review denied 8/17/09.

470

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Laurence J. Fehring* of *Habush, Habush & Rottier, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David J. Pliner* of *Corneille Law group, L.L.C.* of Madison.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. The Estate of Asia D. Jones appeals from the grant of summary judgment in favor of Capitol Indemnity Corporation, the general commercial general liability ("CGL") insurer for Come & Grow Learning Arts Center, Inc., and Wee World Day Care, Inc. (the Day Care Center involved in this case). The Estate contends the trial court erred when it ruled that Capitol's CGL insurance policy did not provide coverage based on the policy's exclusion for bodily injury arising out of the use of an automobile. The Estate argues that the "independent concurrent cause" rule applies, requiring coverage under Capitol's CGL policy. Because the facts alleged in the complaint triggered coverage under the CGL policy pursuant to the independent concurrent cause rule, the trial court erred in granting summary

judgment to Capitol. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. The facts asserted in the complaint pertinent to the coverage issue in this case are as follows: On June 9, 2005, Ronald Turkvan, a van driver for the Day Care Center, picked up two-year-old Asia from her home and brought her to the Day Care Center. She was on the schedule to be at the Day Care Center that day. When Turkvan arrived at the Day Care Center, however, he did not unbuckle Asia from her car seat nor did he bring her into the Day Care Center. He forgot about her and left her in the van. Even though Asia was expected at the Day Care Center on June 9, none of the other employees inquired as to why she was not in the Day Care Center. None of the staff looked for Asia until her mother arrived in the afternoon to pick her up. After searching, Asia was located in the transport van, still strapped into her car seat. Asia died of hyperthermia. The Estate made claims against the Day Care Center for the negligence of its employees. The Day Care Center had two separate insurance policies, one for commercial automobile coverage with Progressive Insurance Company, and another policy for commercial general liability insurance with Capitol. The Estate settled the claim against Progressive (based on the negligent conduct of Turkvan) for the policy limits and then filed suit against the Day Care Center, its employees, and Capitol. Capitol filed a motion seeking a declaration that the CGL policy did not provide coverage based on its exclusion for acts arising out of the use of an automobile. The Estate opposed the motion, arguing that the independent concurrent cause rule applied, requiring Capitol to provide coverage. The trial

473

court ruled that "the arguable negligence of the staff at the Day Care Center . . . doesn't rise to an independent concurrent cause." It granted summary judgment in favor of Capitol. The Estate now appeals.

## Discussion

### I. Standard of Review

¶ 3. This case comes to us following the granting of summary judgment. We review orders for summary judgments independently, employing the same methodology as the trial court. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). We shall affirm the trial court's decision granting summary judgment if the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (2007–08).[1] A motion for summary judgment may be used to address issues of insurance policy coverage. *See Calbow v. Midwest Sec. Ins. Co.,* 217 Wis. 2d 675, 679, 579 N.W.2d 264 (Ct. App. 1998). This case involves interpretation of an insurance contract, which requires our independent review. *See Folkman v. Quamme,* 2003 WI 116, ¶ 12, 264 Wis. 2d 617, 665 N.W.2d 857. "Language in an insurance policy should be given its common and ordinary meaning and should be construed as it would be understood by a reasonable person in the position of the insured." *Smith v. State Farm Fire & Cas. Co.,* 192 Wis. 2d 322, 329, 531 N.W.2d 376 (Ct. App. 1995).

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

## II. Pertinent Policy Provisions

¶ 4. The CGL policy involved here includes general liability language:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

The Estate argues that the coverage grant extends to the Day Care Center's employees' negligent acts, provided those acts are within the scope of their employment or done while performing duties related to the conducting of the business. Capitol does not dispute this assertion. Instead, it contends that the auto exclusion within the CGL policy relieves it from providing coverage in this case. The exclusion provides that the CGL will not afford coverage for: "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading."

## III. Independent Concurrent Cause

██

¶ 5. The issue in this case is whether the independent concurrent cause rule applies under the facts and circumstances of this case. The Estate argues that it does and Capitol argues that it does not. The independent concurrent cause rule operates to extend coverage " 'to a loss caused by the insured risk even though the excluded risk is a contributory cause, [w]here a policy

expressly insures against loss caused by one risk but excludes loss caused by another risk.' " *Smith*, 192 Wis. 2d at 331 (citation omitted). The "independent concurrent cause must provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded risk to make it actionable." *Id.* at 332.

¶ 6. Here, the Estate alleges that the Day Care Center's employees' negligence of failing to notice that Asia was not at the Day Care Center on a day she was expected and failing to look for her or make some inquiry into where she was constituted an "insured risk" under the CGL policy. They argue that this negligence provides an independent basis for a cause of action from the negligence of the van driver who left Asia in the van. They acknowledge that the excluded risk—leaving Asia in the van—contributed to her injury. However, they assert that the employees' negligence is a separate act of negligence which contributed to Asia's death.

¶ 7. In order to determine whether the acts alleged here are independent concurrent causes, we are guided by the analysis set forth in *Lawver v. Boling*, 71 Wis. 2d 408, 238 N.W.2d 514 (1976). In that case, Lawver was injured while helping Clarence E. Boling, his father-in-law, put some boards on the side of the barn on Boling's farm. *Id.* at 410–11. The two had rigged up a chair connected to a pulley and rope, which was then tied to Boling's pick-up truck. *Id.* at 411. Lawver was on the chair, which moved up and down as Boling slowly drove the truck forward or backward. *Id.* At one point, Lawver yelled to Boling to stop because something was wrong with the rope. *Id.* Boling did not hear Lawver, did not stop, and the rope snapped, causing the chair, with Lawver on it, to fall to the ground. *Id.* Lawver was

476

injured and filed suit against Boling, his automobile insurance company—Cumis Insurance Society, Inc., and Boling's comprehensive general liability insurer, Homestead Mutual Insurance Company. *Id.* at 410. Both insurers moved for summary judgment on coverage. *Id.* The trial court granted summary judgment to Homestead and an appeal followed. *Id.*

¶ 8. The Homestead CGL policy had an automobile exclusion and Homestead argued that based on that exclusion, it was not obligated to provide coverage. *Id.* at 417. Our supreme court reversed the summary judgment grant, adopting the reasoning in *State Farm Mutual Automobile Insurance Co. v. Partridge*, 514 P.2d 123 (Cal. 1973), that when a covered risk and an excluded risk combine to cause an injury, both insurers should provide coverage until the factual determination of causation has been resolved. *See Lawver*, 71 Wis. 2d at 422. It held that at the time of summary judgment, "it ha[d] not yet been determined whether Lawver's injuries resulted from negligence . . . in the actual operation of the truck (an excluded risk [under the CGL policy]) or from negligence in the choice of materials for and manner of construction of the rigging (a covered risk [under the CGL policy]), or both." *Id.* Thus, the *Lawver* court held that "Homestead should not be excused from its obligation to defend the action or pay benefits until it has been determined that the injuries did not result, even in part, from a risk for which it provided coverage and collected a premium." *Id.*

¶ 9. In applying this analysis to our case, we reach the same result as did the supreme court in *Lawver*. The case before us presents two separate assertions of negligence: (1) Turkvan's negligence for failing to remove Asia from the van (the excluded risk), and

(2) the negligence of the staff at the Day Care Center for not looking for Asia or inquiring as to why she was not present on a day she was expected (the covered risk). Turkvan's negligence, although it preceded the negligence of the staff, did not contribute to the staff's alleged negligence. Their duty was separate and independent of Turkvan's actions. The staff has a duty to make sure that all the children who are expected to be at the Day Care Center on any given day are accounted for regardless of how they arrive at the center. Thus, the staff's alleged negligence does not require the use of an automobile to be actionable. The staff's responsibility to ensure children who are expected to attend the center that day are actually in the center exists independent of mode of arrival. The duty exists regardless of whether a child arrives in a vehicle, on foot or by bike. Accordingly, we conclude that this case requires the application of the independent concurrent cause rule, and thus, the complaint asserts a covered risk under Capitol's CGL policy.

¶ 10. Capitol contends that this is not a case of independent concurrent causes because if Turkvan had not left Asia in the van, the alleged negligence of the staff in failing to look for her would not be an issue. Looking at the facts in this case under Capitol's "but for" analysis misses the mark. The case law addressing concurrent causes does not use that analysis. Rather, the analysis requires an examination of whether a covered risk under the CGL policy was a potential cause of the injury. Would the insured in this case reasonably expect coverage for the staff's alleged negligence under its CGL policy? *See Tara N. v. Economy Fire & Cas. Ins. Co.*, 197 Wis. 2d 77, 88, 540 N.W.2d 26 (Ct. App. 1995) (policies should be interpreted to further the insured's reasonable expectation of coverage).

478

¶ 11. It can be difficult to ascertain coverage issues in cases involving both an allegation of an auto-related cause and a non-auto related cause. When there is an auto-related cause of an injury, a CGL insurer will argue there is no coverage under the CGL policy based on the auto exclusion in its policy. That is exactly what happened here. However, when the facts in a case assert that an accident was caused jointly by a non-auto related cause and an auto-related cause, the CGL's auto exclusion does not automatically control. Rather, the crucial question is whether the injuries resulted from negligence, if any, arising out of the use of the auto (the excluded risk) or from the negligence of the staff in failing in its duty to make sure all children expected on any given day are accounted for (the covered risk), or both. *See Lawver*, 71 Wis. 2d at 422. If the injuries arise solely from the excluded risk, there is no coverage under the CGL policy. But if the injuries arise from the covered risk, or from both the covered and excluded risk jointly, then coverage is triggered under the CGL policy.

¶ 12. Here, it has been alleged, but not yet determined, that Asia's death was caused jointly by two separate and independent instances of negligence: (1) Turkvan's failure to remove Asia from the van; and (2) the staff's negligence in failing to look for Asia whom they were expecting to be at the center on the day in question. Each act of negligence could stand alone. Each is covered by a separate insurance policy. Turkvan's act of negligence was covered under Progressive's automobile policy. The staff's negligence is covered by Capitol's CGL policy. Until it has been determined that the staff's alleged negligence was not a cause in Asia's death, Capitol is obligated to provide coverage to the Day Care Center. Thus, the trial court erred in granting Capitol's summary judgment motion on coverage.

¶ 13. Capitol cites *Smith* and *Bankert v. Threshermen's Mutual Insurance Co.*, 110 Wis. 2d 469, 329 N.W.2d 150 (1983) in support of its argument that the covered risk requires the occurrence of (or is dependent upon) the excluded risk and therefore we should affirm the summary judgment in its favor. We are not persuaded. *Smith* and *Bankert* are both distinguishable on the facts specific to those cases.

¶ 14. In *Smith*, we held that the independent concurrent cause rule did not apply because the driver of a snowmobile's acts of intoxication and failure to put a helmet on his passenger could not form an independent cause of action from the crashing of the snowmobile itself. *Id.*, 192 Wis. 2d at 331–33. In other words, the insured in *Smith* could not be sued for his intoxication or failure to put a helmet on his passenger because those acts cannot form an independent claim without the crashing of the snowmobile.

¶ 15. Likewise, in *Bankert*, our supreme court held that the independent concurrent cause rule did not apply for the act of parents' negligent entrustment or supervision of their minor child who took a motorcycle off the property and crashed into a parked car. *Id.*, 110 Wis. 2d at 471–72. It ruled that the parents' acts were not independent from the operation of the motorcycle. *Id.* at 473. In other words, the parents could not be sued for negligent entrustment or supervision as a stand alone claim. For the *Bankert* claim to exist, there has to also be the negligent operation of the motorcycle.

¶ 16. Both *Smith* and *Bankert* are distinguishable from the instant case. As noted above, the use of the motor vehicle is not required in order to trigger the duty and responsibility of the staff of the Day Care Center to make sure that those children expected on that day were actually present. The negligence of the

staff could form the basis of a stand alone claim, without requiring the operation of a motor vehicle. Thus, based on our analysis above, we conclude that the facts alleged in the complaint triggered coverage under the CGL policy pursuant to the independent concurrent cause rule. Accordingly, the trial court erred in granting summary judgment to Capitol. We reverse the trial court's ruling and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.